[No. 15300.  Department One.  December 30, 1919.]

DONALD SMITH, *Respondent*, v. GEORGE BROWN,
*Appellant*.[1]

JOINT ADVENTURES—MUTUAL LIABILITIES—DIVISION OF PROFITS—
JUDGMENT. In an action on a contract between two promoters of a
corporation whereby each was entitled to one-half of the net profits
of the enterprise, plaintiff is not entitled to recover a money judg-
ment on proof that defendant had received a certain amount of
stock in the company, which was worth less than par, in the absence
of any proof of the value of the stock; and the judgment should be
for fifty per cent of the net amount of stock received as admitted
in the answer.

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered December 14, 1918,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court.  Modified.

*Cassius E. Gates,* for appellant.

*Winter S. Martin* and *A. C. Hough,* for respondent.

HOLCOMB, C. J.—In October, 1917, appellant, Brown,
learned of what he considered a favorable opportunity
in the fishing industry at Clayoquot Sound, B. C.  At
that time he had an office in the Pantages Building in
Seattle.  This office adjoined that of respondent,
Smith, who was engaged in business-brokerage.  It is
not clear from the record whether Brown approached
Smith or whether the opposite was true, but neverthe-
less they soon began to discuss the proposition Brown
had in mind.  The record discloses that Smith was
apprised that the proposition would involve an invest-
ment of at least fifty or sixty thousand dollars, and
he agreed to obtain for Brown subscribers to the
capital stock of the company proposed to be formed.
It is difficult from the record to say that Smith agreed

[1]Reported in 186 Pac. 298.

to obtain the full amount of subscriptions. The evidence shows that it was agreed between them that they should divide equally whatever profit Brown made in promoting and organizing the corporation.

Smith proceeded to introduce Brown to one Dr. Campbell, who subscribed for three thousand shares of the stock, and through Dr. Campbell other subscriptions to the extent of $12,000 were obtained. Brown, of his own initiative, secured $20,000 of additional subscriptions, making a total of $35,000 cash which was subscribed for stock in the company. Smith made some representations that he would himself subscribe for $6,000 par value of stock, but this he never did. He did, at a meeting of prospective Seattle subscribers, address them urging them to invest in the proposition, but beyond what has been related, there is little evidence that he aided Brown in his efforts to get the corporation going.

The corporation was organized with a capital stock of 250,000 shares, of the par value of $250,000. It is not clear from the record how much actual cash was received from stock subscriptions, although it is certain it was much less than $50,000. A total subscription of stock to the extent of about $80,000 was obtained, many of the fishermen who took stock turning in their boats and other fishing apparatus in payment therefor. After the corporation was organized, at a meeting of directors, the sum of $15,000 was voted to Brown for his efforts in promoting and organizing the corporation. We cannot escape the conviction that this $15,000 was voted him with the understanding that he would take it, not in cash, but in stock of the corporation, which he immediately did. Of this $15,000 of stock, Brown paid out various portions as commissions, so that, as a net profit for promoting and organizing the corporation, he realized $8,000 par value in

stock of the corporation. There is little evidence as to the real worth of this stock, but the corporation was embarrassed for funds and lost much of its property through sheriff's sale, so that it would seem the stock was of a value far below par.

A trial of the case before the court sitting without a jury, resulted in findings in favor of plaintiff, upon which the court entered a money judgment against the defendant for $3,500.

It is the contention of appellant that the trial court erred in finding upon a *quantum meruit* when the plaintiff had declared upon an express contract. However that may be, there is no evidence in the record of the value in money of respondent's services, nor is there any evidence that, at the time of the alleged breach by appellant, the stock that respondent should have received was of the value of $3,500, or any other sum. If there was any meeting of the minds shown, it was an agreement to divide the net proceeds received by Brown. These net proceeds, according to appellant's own statement, were in stock of the corporation in the amount of $8,000. Respondent claims, "By the terms of the agreement, if George Brown had received cash money for his promotion services, respondent would have been entitled to one-half of the amount received." True. But respondent further asserts, "as the proof developed, Brown received stock instead of money. He was therefore required to tender one-half of the stock, and failing to do so, subjected himself to a payment of this amount of money." This is utterly fallacious. If he had breached the agreement at that time by failing to tender one-half of the amount received, then, in order for respondent to recover upon a *quantum meruit,* it was necessary that he show what the value of the stock was at that time. In this he utterly failed. In view of this, there

was nothing for the court to do but to divide the proceeds, which was only stock of the corporation. It is true that Smith did not obtain all of the subscriptions to the capital stock of the corporation, nor did he obtain fifty thousand dollars' worth, but it does not appear from the record that his contract with appellant called for his doing either of these things. He did secure subscriptions at a time when it was most difficult to interest subscribers in this particular investment, and it would seem that he fully performed.

The lower court gave respondent a money judgment for $3,500. In view of a lack of evidence as to the value of fifty per cent of appellant's net profit, a more correct result would have been reached if the court had awarded the respondent fifty per cent of the net amount of stock received by appellant, or $4,000, face value, of the stock, as admitted in his answer.

The judgment is therefore modified, awarding to respondent stock of the corporation received and held by appellant in the amount of $4,000, face value.

Appellant will recover costs of this appeal.

PARKER, MACKINTOSH, MITCHELL, and MAIN, JJ., concur.